Paul Stark
IDAHO EDUCATION ASSOCIATION
P.O. Box 2638
620 N. Sixth Street
Boise, Idaho 83701
Telephone: (208) 333-8560
Facsimile: (208) 336-6967

James M. Piotrowski
Marty Durand
HERZFELD & PIOTROWSKI, PLLC
P.O. Box 2864
824 W. Franklin
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9201

      Attorneys for Plaintiff


BEFORE THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CRAIG EASTOP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-342 |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT AND DEMAND |
| SHAWN BENNION, ROB CLAYTON, | ) | FOR JURY |
| KELLY GREEN, ELLEN MANDEVILLE, | ) | |
| KEVIN GARRISON, all in their official | ) | |
| Capacities as members of the BOARD OF | ) | |
| TRUSTEES OF THE BLAINE COUNTY | ) | |
| SCHOOL DISTRICT, and GWENCAROL | ) | |
| HOLMES, in her official capacity as | ) | |
| Superintendent, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMES NOW the Plaintiff, by and through counsel, and for his Complaint would show

as follows:

## I.  Nature of the Action

1.      Plaintiff Craig Eastop ("Eastop") files suit for a series of violations of constitutional, statutory and common law rights occurring after more than 16 years of faithful and effective service as a teacher to the children of the Wood River Valley.  From the Spring through the Fall of 2017, the Blaine County School District turned on a long-term and previously highly valued employee, executing a plan to rid itself of Plaintiff Eastop and force him out of his position as a P.E. teacher and informal school leader.  To accomplish this scheme, the School District took advantage of Eastop's disabilities, ignored state and federal law protecting individuals with disabilities, attempted to force Eastop to undergo illegal invasions of his privacy, and ultimately terminated him in retaliation for his insistence that the government respect his constitutional and legal rights.  Craig Eastop brings suit for reinstatement, damages and declaratory relief as appropriate.

## II.  Parties, Jurisdiction, Venue

2.      Plaintiff Craig Eastop is an individual who resides in Blaine County, Idaho.

3.      Defendant Board of Trustees is the governing body of the Blaine County School District, a political subdivision of the State of Idaho.  The Board of Trustees consists of five members all of whom reside in Blaine County, Idaho.

4.      The claims herein arise under federal and state law and include claims under the Rehabilitation Act, Americans with Disabilities Act, and the Fourth Amendment to the United States Constitution.  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §1331, 29 U.S.C. §794a, 42 U.S.C. §12117, and 42 U.S.C. §1983. The Court has supplemental jurisdiction over state law claims alleged herein pursuant to 28 U.S.C. §1367.

5.      Because the acts and omissions giving rise to the claims set forth herein occurred within the state of Idaho, venue is appropriate in this District.

### III.  Facts and Background

6.      Eastop was first employed as an elementary school teacher in the Blaine County School District for the 2000-2001 school year.  He remained so employed continuously until the unlawful termination of his employment in November, 2017.

7.      Eastop was first hired as an elementary teacher for a 5th grade class and subsequently became a Physical Education ("P.E.") teacher, an assignment he held until his termination.

8.      During his first 16 years of employment, Eastop generally received highly laudatory evaluations of his professional performance.  Eastop was eventually assigned to work under the supervision of Principal Brad Henson who got to know Eastop very well.  Henson was aware that Eastop suffered from potentially disabling medical conditions that affected his mental health and in years prior had sought to help Eastop address those conditions.

9.      On May 2, 2016, Principal Henson evaluated Eastop's performance and found that he met or exceeded the School District's expectations in every category.  Principal Henson further commented on Eastop's strong collaborative work with other teachers, his consistency in being "spontaneous and weird," and using such traits to "seiz[e] a moment or opportunity to inspire kids, through fun."  Henson further praised Eastop's "positive and proactive approach," his willingness "to try new things, break the mold and embrace possibility," and for "being the gentle giant of our school."

10.     In September, 2016, a teacher complained of alleged inappropriate comments by Eastop, and Principal Henson used that occasion to accuse Eastop of abusing alcohol.  Henson

COMPLAINT - 3

did not explain what connection might have existed between the use of alcohol and allegedly inappropriate comments to a co-worker.  Henson did not accuse Eastop of being under the influence of alcohol at work, nor has there ever been any evidence of alcohol use by Eastop at work.  Henson's email was provided to Shannon Maza, the District's Human Resources Manager ("Maza").

11.     Some seven months later, Henson informed Eastop that members of the PTA had accused Eastop of behaving oddly while he was away from school.  Henson again commented about Eastop's alcoholism, and accused him of abusing alcohol.  As alleged above, Henson did not accuse Eastop of being under the influence of alcohol at work, nor has there ever been any evidence of alcohol use by Eastop at work.  Henson again forwarded his email to Maza, the Human Resources Manager.

12.     On April 28, 2017, Eastop was compelled to lead a school wide assembly without any preparation, and on a moment's notice, due to Henson's absence from the school building, an event that had occurred many times before and which had repeatedly caused Eastop anxiety. Earlier the same day, Eastop had been struck in the face with a rock thrown by a student, causing him pain, and chipping a tooth.  Eastop used the assembly to talk about the fact that an unknown student had been throwing rocks and not taking responsibility for their conduct.  Other teachers reported feeling "uncomfortable" about the way Eastop handled the assembly.

13.     On May 11, 2017, Principal Henson found Eastop with chewing tobacco in his mouth, in violation of the school district's anti-tobacco policy.

14.     On May 12, 2016, Principal Henson and Maza held a meeting with Eastop. Eastop admitted to violating the anti-tobacco policy.  In the course of the conversation Eastop asked whether the meeting was disciplinary in nature.  Maza told him it was "just a

COMPLAINT - 4

conversation." Maza was, or should have been, aware that if the meeting was disciplinary in nature or could potentially lead to discipline, that Eastop had a right to have a representative from the Blaine County Education Association ("Association") present during the meeting. On information and belief, Maza's statement that the meeting was "just a conversation" was intended to prevent Eastop from exercising his right to Association representation. When the discussion veered toward other allegations of alleged misconduct, Eastop exercised his well-established legal right to discontinue the conversation unless and until a representative from his Association was present to assist him. At a meeting the following business day, at which Eastop had Association representation, the meeting was converted from "just a conversation" to informing Eastop that he was being placed on administrative leave, and would be barred from public school grounds during the leave.

15.     On or about May 17, 2017, Tryntje Van Slyke ("Van Slyke"), the Association representative who had been working with and on behalf of Eastop received a phone call from a school district administrator who informed Van Slyke that the district administration would be recommending that Eastop be placed on probation. H.R. Manager Maza later scheduled a meeting with Eastop, Association Representatives Van Slyke and Linda Jones ("Jones"), and Principal Henson for the purpose of discussing placing Eastop on probation, and the terms of that probation. The meeting was to occur at 5:00 p.m. on May 25.

16.     Also on May 25, 2017, the Board of Trustees met, starting at 12:01 p.m.. On information and belief, one of the purposes of the meeting was to review and, if necessary to act upon, the recommendation by Principal Henson and/or Superintendent GwenCarol Holmes ("Holmes") that Eastop be placed on probation. According to the official minutes, the meeting of the Board adjourned at 1:04 p.m., shortly before Maza sent an email canceling the previously

scheduled 5:00 p.m. meeting to discuss terms of probation. On information and belief, at no time prior to 1:04 p.m. on May 25, 2017, did Principal Henson or Superintendent Holmes make any recommendation, in writing, that Eastop's employment be terminated.

17. The District subsequently produced a document which it claims was the recommendation for termination and/or request for a hearing to be held for that purpose. That document contained significant and excessive details about the alleged misconduct by Eastop. This document was the basis for the Board of Trustees issuing a notice of hearing for possible termination, and had the effect of unfairly prejudicing and/or biasing the Board of Trustees against Eastop, and demonstrates why the Board of Trustees made a decision to reject the recommendation for probation and instead insert its own ex parte adjudication and decision that the facts warranted termination.

18. School District representatives later confirmed that Superintendent Holmes went to the May 25, 2017 school board meeting with a recommendation to place Eastop on probation. During the course of that meeting, the members of the Board of Trustees had additional questions for which Maza was called into the meeting. Maza provided detailed information about Eastop, her conversations with him, and her investigation of the allegations against him. This all occurred during a meeting held in Executive Session at which only those chosen by the Board of Trustees were present. On information and belief, it was at this meeting that Superintendent Holmes was instructed by the Board to change her recommendation to termination.

19. On May 26, 2017, Assistant Superintendent John Blackman, accompanied by an armed and uniformed law enforcement officer went to Eastop's house to deliver the notice of recommendation for termination and request for due process hearing. The document was

COMPLAINT - 6

backdated to May 25, 2017.  There is no requirement in law or otherwise that such notices be hand-delivered and they are routinely delivered by mail, electronic mail, or registered mail. There is no substantive reason that such notices should be or must be personally served on the recipient, and the presence of a law enforcement officer was never explained.

20.     During a June 15 meeting between Eastop, Principal Henson, Maza, and Association Representatives Van Slyke and Jones, Principal Henson expressly mentioned Eastop's "health," and expressed his desire to see Eastop improve his "health."  Eastop's representatives in that meeting expressed to Principal Henson and Maza that if their concerns were for Eastop's health, the discussion should be focused on accommodating Eastop's disabilities under the Americans with Disabilities Act.

21.     On or about June 22, 2017, Superintendent Holmes informed all of the teachers in the District that they should come to the District Office to sign their new contracts that day. Eastop inquired whether he should do so since, at that time, he was still an employee of the District, no due process hearing had been held, and he believed that no decision had been made about whether to terminate his employment. Despite that, Superintendent Holmes informed Eastop that the District did not have a contract for him, and that no contract would be issued until after the due process hearing.  Superintendent Holmes did not state whether the decision to not issue Eastop a contract was her decision, or that of the Board of Trustees.

22.     On June 26, 2017, Jones, as an Association representative of Eastop requested, via email, that the District engage in the interactive process for determining appropriate accommodations for Eastop.  The email message pointed out that based on a number of documents, it was apparent that the District perceived Eastop as an individual suffering from a disability.  Maza replied the next day, soliciting the relevant parties for available dates for a

COMPLAINT - 7

meeting to discuss reasonable accommodations, and promising to provide a copy of the job description for Eastop's position.

23.     Despite her quick response on June 27, 2017, Maza did not provide a job description to Eastop until three weeks later, on July 19, 2017.  No meeting was ever held to address Eastop's disabilities, real or perceived, or any accommodations necessary to respond to them despite Eastop's repeated assertions of his desire to receive accommodations as provided for by law.

24.     On several occasions during the summer of 2017, Eastop, through his Association representatives and/or legal counsel, requested the opportunity to address the need for accommodations for his disabilities.  At the time, Eastop was addressing his alcoholism, as well as other mental health issues, and an injury to a shoulder that was limiting physical mobility. In response to Eastop's request, the District agreed to meet with Eastop and discuss his disabilities, perceived disabilities, or need for accommodation.  However, such a meeting never occurred because Eastop was placed on probation, placed on administrative leave, and ultimately terminated before such a meeting was ever held.

25.     By letter dated August 15, 2017, Eastop was informed that rather than facing termination proceedings, as he had been informed in May, he would instead be placed on probation.  The bases for putting Eastop on probation were expressly stated to include:

> 1.     Concerns regarding Eastop's state while upon school property and serving the students of the District.
>
> 2.     Concerns regarding Eastop's knowledge of and/or willingness to comply with the provisions of District Policies and Procedures.

COMPLAINT - 8

      3.     Interpersonal relationships and appropriateness of communications with colleagues.

26.     By email dated August 16, 2017, Eastop was informed that his contract to teach was being renewed.

27.     Eastop was directed by Maza to attend a meeting on August 22, 2017, to discuss the terms of his probation.  At the August 22 meeting Eastop executed his employment contract for the 2017-2018 school year.  The participants in that meeting discussed but did not reach any agreement regarding the terms of probation that Eastop would be subjected to during the 2017-2018 school year. At this meeting, Eastop's disabilities and need for reasonable accommodations were discussed extensively, but no decisions to accommodate his disabilities were made.

28.     Upon information and belief, Maza had scheduled an armed and uniformed law enforcement officer to make an unannounced appearance at this August 22 meeting to immediately test Eastop for drugs and/or alcohol.  The meeting was interrupted by the presence of an unidentified individual that Maza met outside the office and spoke with for several minutes before returning to the meeting alone.

29.     On August 23, 2017, Eastop was informed that the District had imposed terms of probation, including regular classroom observations, regular meetings between Eastop and Principal Henson during the term of the probation, and prohibitions on being under the influence of drugs or alcohol and/or engaging in disrespectful communications.  The probation terms imposed by the District required Eastop to submit to "testing" at the sole discretion of Principal Henson for drugs and alcohol.  The probation terms imposed no requirement that there be any suspicion, much less reasonable cause, to believe that Eastop was under the influence in order to require such testing.  Maza had informed Eastop the previous day that she had the power to force

COMPLAINT - 9

Eastop to submit to such a test every day if she desired.  As alleged above, there was never any evidence that Eastop was under the influence of alcohol while at work.  The first and only time alcohol use was ever an issue with Eastop's employment was upon Eastop's request for reasonable accommodations in 2017.

30.     Moments after Eastop was informed of his new terms of probation, he was summoned to the school district offices and required to undergo a drug and alcohol "test." Eastop was not informed of the nature of the test, nor of any suspicion that he was under the influence. He was informed only that he was required to appear at the School District office to undergo such a "test."

31.     Eastop refused to undergo such a suspicionless, warrantless search, and also refused to undergo medical testing that was not justified by any business necessity. Upon exercising his rights under the Fourth Amendment to the United States Constitution and the Rehabilitation Act, Eastop was informed that he would not be permitted to work that day.  On August 24, 2017, Eastop was informed by email that he was not to work that day or August 25, 2017. On August 25, 2017, Eastop was told that he was being placed on paid administrative leave, because of his failure to submit to the warrantless, suspicionless search and medical examination required by the imposed terms of probation.

32.     On or about August 24, 2017, Eastop was first provided, through his counsel and from the School District's counsel, a performance evaluation for the 2016-2017 school year.  The evaluation was based on a single observation (at most) of Eastop's teaching performance, and had not been presented to him prior to his counsel's receipt of the document.  Eastop was not provided any opportunity to discuss the evaluation with his evaluator or to provide input into its

final form. The evaluation further included personal health information related to his disability for which he had requested reasonable accommodations.

33.     On or about September 12, 2017, the Board of Trustees of the School District issued a notice of possible termination, and a notice of hearing to be held on September 28, 2017. The notice informed Eastop that he was being considered for termination for refusing to submit to warrantless, suspicionless drug and alcohol testing.  The notice further claimed, falsely, and as a second reason for possible termination that the requirement for such testing was part of the "negotiated" terms of probation, despite the fact that no agreement was reached over such testing.  Finally, the notice claimed as a final reason for possible termination that the refusal to undergo such testing was "tantamount to a positive test result."

34.     On September 13, 2017, the School District utilized an armed and uniformed law enforcement officer to deliver the Board of Trustees' notice of possible termination to Eastop at his alternative place of employment (second job) where the officer asked employees for Eastop by name and questioned Eastop's co-workers about Eastop.  There is no requirement in law or otherwise that such notices be hand-delivered and they are routinely delivered by mail, electronic mail, or registered mail.  Further, the school district was well-aware that Eastop was represented by counsel.  There is no substantive reason that such notices should be or must be personally served on the recipient, nor is there any reason for the presence of an armed and uniformed officer.

35.     The hearing specified in the September 12, 2017 letter was rescheduled and held on October 25 and 26, 2017.  The hearing occurred before the Board of Trustees sitting in a decision making capacity.  During the hearing, Eastop continued to assert that the demand for drug and alcohol testing on August 23, 2017 violated his rights under the Fourth Amendment.

COMPLAINT - 11

36.     Upon information and belief, the Board of Trustees received legal counsel regarding Eastop from the same law firm that prosecuted the matter against Eastop for the school district administration.   Eastop objected to the dual representation at the hearing but was overruled by the Board of Trustees.

37.     Following the hearing, the Board of Trustees decided it would terminate Eastop's employment because of his refusal to undergo drug and alcohol testing.

## IV.  Claims for Relief

### FIRST CLAIM FOR RELIEF

### [Violation of Idaho Code Section 33-513(5)]

38.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

39.     Idaho statutory law provides that a school board may only suspend, place on administrative leave, place on probation or discharge a certificated professional employee for a material violation of any lawful rule or regulation of the board of trustees or of the State Board of Education or for any conduct which could constitute grounds for revocation of a teaching certificate.  The above-discussed reasons are exclusive; as such, placement of an employee on administrative leave for any other reason would be and is invalid.

40.     Eastop has rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

41.     By placing Eastop on probation in August 2017 and incorporating punitive measures targeting his disability (alcohol testing without reasonable suspicion), as well as the fact that there was no issue whatsoever with alcohol use at work, the School District violated Idaho statutory law in that the Board's reasons for placing Eastop on probation (as it relates to

COMPLAINT - 12

the alcohol testing) do not constitute material violations of any lawful rules or regulations of the Board of Trustees or State Board of Education, or conduct which could constitute grounds for revocation of a teaching certificate.

42. By placing Eastop on administrative leave in September 2017 for failure to surrender his constitutional rights under the plan of probation, the School District violated Idaho statutory law in that the Board's reasons for placing Eastop on administrative leave do not constitute material violations of any lawful rules or regulations of the Board of Trustees or State Board of Education, or conduct which could constitute grounds for revocation of a teaching certificate.

43. As a proximate result of the School District's statutory violation, Eastop has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### [Violation of Idaho Code Sections 33-515 and 33-513]

44. Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

45. Idaho statutory law provides that upon being offered and accepting a renewable contract after the fourth full year of being a contracted teacher in the same school district, that teacher will have obtained renewable contract status in his or her employment.

46. Idaho statutory law provides that a school board must offer and deliver a standard renewable teacher contract by July first of every year to those individuals that have obtained renewable contract status.

COMPLAINT - 13

47.     Idaho statutory law provides that a school board must allow the certificated individual being offered a contract for employment between ten (10) and twenty-one (21) days after the contract is delivered to sign and return the contract to the Board of Trustees.

48.     Eastop, having taught in the School District for approximately sixteen (16) years, has renewable contract status with the School District.

49.     Eastop was not provided a teacher contract by July first in violation of Idaho Code section 33-515(3)(a).

50.     Eastop was not provided a period between ten (10) and twenty-one (21) days after the contract is delivered to sign and return the contract to the Board of Trustees in violation of Idaho Code section 33-513(1).

51.     As a proximate result of the School District's statutory violation, Eastop has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### [Violation of Idaho Code Sections 33-515(2)]

52.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

53.     Idaho statutory law provides that at least once annually the performance of each renewable contract certificated employee shall be evaluated no later than June first of each year.

54.     Idaho statutory law provides that such evaluation shall include a minimum of two (2) documented observations, one of which shall be completed before January first of each year.

55.     Eastop was not provided an evaluation before June 1, 2017, in violation of Idaho Code section 33-515(2).

56.     Eastop was not provided an evaluation that included two (2) documented observations in violation of Idaho Code section 33-515(2).

57.     Eastop was not provided an evaluation that included one (1) evaluation completed before January 1, 2017 in violation of Idaho Code section 33-515(2).

58.     As a proximate result of the School District's statutory violation, Eastop has suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### [Breaches of Contract (Statutory Violations)]

59.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

60.     Under both Idaho law, and the express terms of Eastop's employment contract with the School District, an Idaho statutory law modifies and becomes part of Eastop's individual employment contract.

61.     As alleged in Eastop's First Claim for Relief, the School District violated Idaho statutory law by placing Eastop on probation and administrative leave during August and September 2017, respectively. This statutory violation constitutes a breach of the School District's individual employment contract with Eastop.

62.     As alleged in Eastop's Second Claim for Relief, the School District violated Idaho statutory law by not providing Eastop a teacher contract by July first and/or by not providing Eastop a period between ten (10) and twenty-one (21) days after the contract is delivered to sign and return the contract to the Board of Trustees.  This statutory violation constitutes a breach of the School District's individual employment contract with Eastop.

63.     As alleged in Eastop's Third Claim for Relief, the School District violated Idaho statutory law by not providing Eastop an evaluation before June 1, 2017, by not providing Eastop an evaluation that included two (2) documented observations, and/or by not providing Eastop an evaluation that included one (1) observation completed before January 1, 2017. This statutory violation constitutes a breach of the School District's individual employment contract with Eastop.

64.     As a proximate result of the School District's violations of Eastop's individual contract, Eastop has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### [Breach of Contract (Breach of Master Agreement)]

65.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

66.     Under both Idaho law, and the express terms of Eastop's employment contract with the School District, the terms of the negotiated master agreement modifies and becomes part of Eastop's individual employment contract.

67.     In June 2016, the School District entered into a Master Agreement with the Blaine County Education Association, which detailed terms and conditions of employment for the 2016-2017 school year and 2017-2018 school year. Subsequent Master Agreements have been entered into with similar language.

68.     Under both Idaho law, and the express terms of Eastop's employment contract with the School District, the terms of the negotiated master agreement modifies and becomes part of Eastop's individual employment contract.

69.     Article XII of the Master Agreement provides, "Any individual contract between the Board and an individual certificated professional employee in the bargaining unit heretofore or hereafter executed shall be subject to and consistent with the terms and conditions of this Agreement."

70.     In addition to the statutorily required observations and evaluation, and corresponding dates for each, Article V of the Master Agreement provides for additional rights when an employee is evaluated by the School District, such as formative feedback, review of evaluation documents and procedure, a pre-observation conference, a post-evaluation meeting between the individual and the evaluator, among other rights.

71.     The School District violated the terms of the Master Agreement by not providing Eastop his rights under Article V of the Master Agreement.  This failure by the School District constitutes a breach of the Master Agreement.  A breach of the Master Agreement constitutes a breach of the School District's individual employment contract with Eastop.

72.     As a proximate result of the School District's violations of the Master Agreement, Eastop has suffered damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### [Breach of Contract (Board Policy Violations)]

73.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

74.     Under both Idaho law, and the express terms of Eastop's employment contract with the School District, the terms of the School District's Board policy modifies and becomes part of Eastop's individual employment contract.

75.     Prior to and during August and September of 2017, the School District maintained a Board Policy which established a reasonable suspicion standard for drug/alcohol use that provided in pertinent part as follows:

Reasonable Suspicion

Any employee who is made aware of or suspects a prohibited incident is taking place, shall report the matter to his/her supervisor. This matter will not be discussed with co-workers or persons not directly responsible for investigating the matter.

Employees reasonably suspected of being under the influence of any controlled substance or alcohol, or otherwise in violation of this policy, will be immediately reported to the Program Administrator at the District Office and required to submit to a drug test as arranged for by the District. No employee will be allowed to return to work until the Program Administrator is notified that his/her test was negative.

Refusal to submit to a drug test may result in immediate suspension without pay and shall be cause for disciplinary action, up to and including a recommendation to the Board of Trustees for discharge.

76.     In August and September of 2017, the School District maintained a Board Policy regarding drug and alcohol testing that provided in pertinent part as follows:

Tests shall be conducted when a trained supervisor or District official has reasonable suspicion that the employee has violated the District's alcohol or drug prohibitions. This reasonable suspicion must be based on specific, contemporaneous, articulable observations concerning the employee's appearance, behavior, speech, or body odors. The observations may include indications of the chronic and withdrawal effects of controlled substances.

Alcohol tests are authorized for reasonable suspicion only if the required observations are made during, just before, or just after the period of the workday when the employee must comply with alcohol prohibitions.

77.     As of August 23, 2017, the date that the School District demanded Eastop submit to a drug and alcohol test, there did not exist any reasonable suspicion as defined in Board policy.

COMPLAINT - 18

78.     The School District's actions demanding Eastop submit to a drug/alcohol test without reasonable suspicion, placing Eastop on administrative leave for refusing said demand, and ultimately terminating Eastop for refusing said demand, violated existing Board policy.

79.     The School District's violation of Board policy constitutes a breach of the School District's individual employment contract with Eastop.

80.     As a proximate result of the School District's violations of Eastop's individual contract, Eastop has suffered damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### [Negligent Infliction of Emotional Distress]

81.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

82.     Under Idaho law, a defendant engages in negligent infliction of emotional distress when the defendant owes a duty of reasonable cause to the plaintiff, the defendant acts unreasonably in violation of that duty, and the plaintiff suffers emotional distress with physical symptoms as a result.

83.     The School District owed a duty of reasonable cause to Eastop.

84.     As alleged above, the School District violated a legal duty to Eastop when, on August 23, 2017, the School District demanded Eastop submit to a drug and alcohol test without reasonable suspicion, with knowledge that Eastop suffered from a  disability (alcoholism), with knowledge that Eastop had months earlier requested workplace accommodations in relation to his disability, and with knowledge that the School District had not provided any accommodations, much less began an interactive process for accommodations.

COMPLAINT - 19

85.     As a proximate result of the School District's conduct, Eastop has suffered damages, including pain and suffering and emotional distress, in amounts to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### [Intentional Infliction of Emotional Distress]

86.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

87.     Under Idaho law, a defendant engages in intentional infliction of emotional distress if the defendant's conduct is intentional or reckless, the conduct is extreme or outrageous, there is a causal connection between the wrongful conduct and the plaintiff's emotional distress, and the plaintiff's emotional distress is severe.

88.     The School District intentionally inflicted emotional distress on Eastop by recklessly and intentionally making a condition of his employment (through a probation plan) that he submit to drug and alcohol tests without any reasonable suspicion, knowing that he was under a disability (alcoholism) for this very issue.

89.     The School District intentionally inflicted emotional distress on Eastop by recklessly and intentionally scheduling a uniformed law enforcement officer to make an unannounced, surprise appearance at the August 22, 2017 meeting (when Eastop was presented with the probation plan for the first time) so as to force Eastop to submit to an immediate drug and alcohol test, without reasonable suspicion, knowing that Eastop had disabilities of alcoholism and mental health issues and had requested reasonable workplace accommodations, all in an attempt to intentionally cause him distress and harm.

90.     The School District intentionally inflicted emotional distress on Eastop by recklessly and intentionally demanding he appear on August 23, 2017, to submit to an immediate

COMPLAINT - 20

drug and alcohol test, without reasonable suspicion, knowing that Eastop had disabilities of alcoholism and mental health issues and had requested reasonable workplace accommodations, all in an attempt to intentionally cause him distress and harm.

91.     The School District intentionally inflicted emotional distress on Eastop by recklessly and intentionally causing an armed and uniformed law enforcement officer to deliver school district notices to him at his home and Eastop's alternative place of employment (second job), in an effort to intentionally cause him distress, embarrassment and harm.

92.     As a proximate result of the School District's tortious conduct, Eastop has suffered damages, including damages to his personal and professional reputation, his emotional and physical well-being, and to his other economic and non-economic interests, all in amounts to be proven at trial.

## NINTH CLAIM FOR RELIEF

### [Breach of the Implied Covenant of Good Faith and Fair Dealing]

93.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

94.     Idaho law implies a covenant of good faith and fair dealing in every contract, including employment contracts.

95.     By engaging in the conduct alleged in Eastop's Fourth through Sixth Claims for Relief, the School District violated the implied covenant of good and fair dealing in its employment contracts.

96.     As a proximate result of the School District's conduct, Eastop has suffered damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

COMPLAINT - 21

**[Violation of Procedural Due Process Rights Under the
Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983]**

97.    Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

98.    Eastop was employed under a renewable status contract with the School District, which term covered the entire 2016-2017 school year (September 1, 2016 through August 31, 2017) and the 2017-2018 school year (September 1, 2017 through August 31, 2018).  Under state and federal law, Eastop's contract infers upon him a property interest in his employment with the School District, which is protected under the procedural due process provisions of the Fourteenth Amendment to the United States Constitution.

99.    As such, Eastop's procedural due process rights are enforceable under the federal Civil Rights Act, 42 U.S.C. § 1983.

100.    Eastop has a constitutional right under the procedural due process provisions of the Fourteenth Amendment to the United States Constitution to a decision maker and a hearing free of either the appearance of or actual bias and, in particular, a hearing where the decision makers had not apparently, probably or actually prejudged the issues in his case.

101.    A school district's utilization of legal counsel to serve as the prosecutor for the administration in discharge proceedings and also advisor to the administrative decision maker violates procedural due process guarantees under the Fourteenth Amendment to the United States Constitution.

102.    Upon information and belief, the law firm serving as the prosecutor for the administration in discharge proceedings in Eastop's termination hearing was the same law firm that had previously advised the School Board of Trustees regarding Eastop and the basis for his termination.

COMPLAINT - 22

103.     The School Board of Trustees and/or several of its Board members prejudged, or reasonably appeared to have prejudged, Eastop's case, and/or were actually or probably biased against him as a result of the above.

104.     By having the same law firm provide both legal advisement to the School Board of Trustees and serve as prosecutor for the administration in discharge proceedings, the School District violated Eastop's constitutional rights.

105.     As a proximate result of the School District's conduct, Eastop has suffered damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

### [Violation of Fourth Amendment Rights and 42 U.S.C. 1983]

106.     Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

107.     As a political subdivision of the State of Idaho, the School District and its Board act under color of law, and were acting in such capacity when they required Eastop to undergo drug and alcohol testing on or about August 23, 2017.  Such testing constitutes a search, and was ordered without the existence of probable cause, reasonable suspicion, or any suspicion of illegal or improper use of drugs or alcohol.

108.     Requiring Eastop to undergo such a search in the absence of legal adequate cause violated Eastop's right to be free from unreasonable searches and seizures, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. 1983.

109.     As a proximate result of the School District's conduct, Eastop has suffered damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

### [Violation of Fourth Amendment Rights and 42 U.S.C. 1983- Retaliation]

110.    Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

111.    As a political subdivision of the State of Idaho, the School District and its Board act under color of law, and were acting in such capacity when they required Eastop to undergo drug and alcohol testing on or about August 23, 2017.  Such testing constitutes a search, and was ordered without the existence of probable cause, reasonable suspicion, or any suspicion of illegal or improper use of drugs or alcohol.

112.    Eastop was legally justified in refusing to undergo such testing in the absence of reasonable suspicion and in so refusing was exercising his rights under the Fourth and Fourteenth Amendments to the United States Constitution. By terminating Eastop's employment because of his lawful refusal to undergo an unlawful search the School District retaliated against Eastop for his exercise of such rights.

113.    As a proximate result of the School District's conduct, Eastop has suffered damages in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF

### [Violation of the Rehabilitation Act, 29 U.S.C. §794]

114.    Eastop incorporates by reference each and every paragraph alleged above into this Claim for Relief.

115.    Throughout the 2016-2017, and into the 2017-2018 school year, Eastop suffered conditions including alcoholism, depression, anxiety, and physical injuries to his body including to his shoulder.  These conditions limited Eastop in several major life activities including

COMPLAINT - 24

physical activities requiring the use of his shoulder, the ability to sleep, engage in social conduct with friends, and concentrate on complex tasks over an extended period.  Throughout that same period, Eastop was able to complete all of the essential functions of his job, causing the Board of Trustees to find in its Findings of Fact, Conclusions and Decision that "the testimony which was presented indicates that [Eastop] is a good teacher."

116.    The School District, through its agents, including Principal Henson and H.R. Manager Maza, perceived Eastop as a person with a disability.

117.    The Board of Trustees receives federal funding for multiple programs operating within the School District.

118.    The School District required Eastop to undergo a medical exam that would have consisted of a screening of either breath, urine or blood for evidence of alcohol use.  All of the foregoing violated the requirements of the Rehabilitation Act.

119.    As a proximate result of the School District's conduct, Eastop has suffered damages, in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

### [Violation of the Rehabilitation Act, 29 U.S.C. §794- Retaliation]

120.    Eastop incorporates by reference each and every paragraph alleged above into this claim for relief.

121.    Pursuant to his rights under the Rehabilitation Act, Eastop refused to undergo an unlawful medical examination.

122.    In retaliation for this refusal, the School District terminated his employment.

123.    As a proximate result of the School District's conduct, Eastop has suffered damages in an amount that will be proven at trial.

WHEREFORE, Plaintiff Craig Eastop prays for relief as follows:

      a.      For trial by jury as to all matters triable;

      b.      For an order reinstating his employment and continuing contract status;

      c.      For an award of damages in amounts to be proven;

      d.      For an award of Eastop's attorney fees and costs;

      e.      For all other relief the Court deems just and proper.

DATED this 2nd day of August, 2018.

IDAHO EDUCATION ASSOCIATION

      /s/ Paul Stark

HERZFELD & PIOTROWSKI, PLLC

      /s/ James M. Piotrowski
James M. Piotrowski
Marty Durand
Attorneys for Plaintiff Craig Eastop

COMPLAINT - 26