UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CRAIG EASTOP,<br><br>Plaintiff,<br><br>v.<br><br>SHAWN BENNION, ROB CLAYTON, KELLY GREEN, ELLEN MANDEVILLE, KEVIN GARRISON, all in their official Capacities as members of the BOARD OF TRUSTEES OF THE BLAINE COUNTY SCHOOL DISTRICT, and GWENCAROL HOLMES, in her official capacity as Superintendent,<br><br>Defendants. | Case No. 1:18-cv-00342-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff's Motions in Limine (Dkt. 48, 56), Defendants' Motion in Limine (Dkt. 52), and the Parties' briefing as to what evidence should be admitted regarding Plaintiff's Fourth Amendment claim (Dkt. 60, 61).

# BACKGROUND

Plaintiff Craig Eastop is seeking damages for wrongful termination due to, what he alleges, was an unreasonable search in violation of the Fourth Amendment and Rehabilitation Act.[1] The background of this case is fully set out in the Court's Memorandum Decision and Order on the Parties' motions for summary judgment (Dkt. 40), and will not be restated in full here. Eastop was an elementary physical education teacher until November 2017. Beginning in Fall 2016 and continuing through Spring 2017 school district officials received reports of Eastop's inappropriate behavior and struggle with alcohol. Of note, Eastop led an assembly in April 2017 where his behavior was alleged to have been particularly erratic.

In May 2017 the Board of Trustees voted to terminate Eastop. At some point between the May decision and August 15, 2017 the Board decided instead to place Eastop on probation. Eastop's probation terms included a provision which required him to submit to drug and/or alcohol testing at the discretion of Principal Brad Henson or his designee. Eastop objected to the testing provision. On August 23,

---

[1] Eastop's claims for breach of contract and negligent infliction of emotional distress also survived summary judgment, however he has indicated he will not litigate these claims at trial. *Pl.'s Trial Br.* at 8, Dkt. 49.

2017, Eastop was asked to submit to a test, pursuant to the terms of his probation. He refused. Following his refusal, he was placed on administrative leave pending a due process hearing. The Board held a due process hearing on October 25, 2017 and, after hearing evidence and arguments, voted to terminate Eastop. Eastop was officially terminated on November 17, 2017.

Trial is set for March 2, 2020. The Parties have filed motions in limine to exclude certain evidence. Following the pretrial conference, the Court requested additional briefing on evidence relevant to the Fourth Amendment issues. Dkt. 57.

## LEGAL STANDARD

There is no express authority for motions in limine in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

## ANALYSIS

A.  **Plaintiff's First Motion in Limine**

   1. **Evidence relating to reasonableness of the search**

Eastop seeks to exclude the following evidence: 1) Eastop's behavior or actions occurring prior to the 2016-17 school year; 2) Eastop's behavior or actions

that were not put before the Board at its August 15, 2017 meeting, including allegations of sexual harassment; and 3) Eastop's behavior or actions occurring after the August 15 Board meeting. *Pl.'s Mot.* at 4, Dkt. 48. Eastop argues that this evidence is not relevant to whether the Board's decision to require him to submit to drug and alcohol testing was reasonable. Eastop also argues that his conduct prior to the 2016-17 school year is stale. *Id.* at 5. Defendants argue that, because the board was in executive session, it is hard to know what they considered in making their decision to implement probation. Defendants also argue that all of Eastop's conduct, including conduct considered at previous board meetings, is relevant to the reasonableness of the search. *See Def.'s Opp.* at 4-5, Dkt. 59.

Determining the reasonableness of a "special needs" search requires a factual, context-specific inquiry. *Chandler v. Miller*, 520 U.S. 305, 314 (1997). This inquiry must consider all of the circumstances surrounding the search. *Id.*; *O'Connor v. Ortega*, 480 U.S. 709, 725 (1987). In *O'Connor* the Court stated that to be reasonable a search must be justified at its inception and reasonably related in scope to the circumstances that justified the interference in the first place. 480 U.S. at 726 (citations omitted). While *O'Connor* was considering an actual search and not a suspicionless search policy, this requirement is reflected in the third *Vernonia* factor—the governmental concern at issue, and the efficacy of the prescribed

search for meeting it. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 660.

In all of the "special needs" cases reviewed by this Court it is clear that courts take a broad view as to what information may be relevant to justifying the search. *Id.*; *see also Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1022 (9th Cir. 1999). While less clear, it appears from all of the "special needs" cases that courts only consider the factors leading up to implementation of the search policy and do not consider information that came to light after the policy had been implemented. This comports with the Court's statement that a search, or in this case the policy prescribing a search, must be justified at its inception. *O'Connor*, 480 U.S. at 726.

The test Eastop refused to take was conducted pursuant to the terms of his probation. The terms of his probation were approved by the Board on August 15, 2017. Accordingly, evidence of Eastop's prior conduct is relevant, but only if it was known and considered by the Board at or before their August 15 meeting.

It is unclear to the Court, and apparently to the parties, what evidence was considered by the Board when it decided to put Eastop on probation. However, that is something that can now be testified to by those in attendance at the Board meeting, including any executive sessions. Thus, the Court will allow evidence relevant to the reasonableness of the testing condition generated prior to August

15, 2017, but only upon a showing that the board was aware of and considered those facts in making its decision.

Defendants argue that, because Plaintiff is bringing a Fourth Amendment retaliation claim, they should be allowed to present evidence of his conduct that was considered at his due process hearing. *Def.'s Opp.* at 3, Dkt. 59. Defendants argue that the jury must determine whether both the testing and Eastop's termination were reasonable. *Def.'s Br.* at 2, Dkt. 60. In *Jackson v. Gates*, 975 F.2d 648, 653 (9th Cir. 1992), the Ninth Circuit held that a city's firing of an employee for refusal to submit to an unconstitutional search is sufficient to maintain a Fourth amendment claim. In *Jackson*, the Ninth Circuit did not consider whether the subsequent termination was also reasonable. *Id.*

The Ninth Circuit has not specifically established a Fourth Amendment retaliation standard, however in the First Amendment context a plaintiff must show that (1) his conduct is constitutionally protected and (2) that the protected conduct was a "substantial" or "motivating" factor in the decision to take an adverse action against him. *Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 882 (9th Cir. 2003) (citing *Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1997)); *accord* Ninth Circuit Model Civil Jury Instruction 9.9 (2017 ed.). If a plaintiff meets these burdens, the defendant must show, by a preponderance of the evidence, that it

would have reached the same decision as to the adverse action even in the absence of the protected conduct. *Id.*

The difficulty with the Defendants' argument, is that the only wrongdoing found by the Board of Trustees at the due process hearing was Eastop's refusal to submit to testing in violation of his terms of probation. *Findings of Fact, Conclusions, and Decision, Pl.'s Ex. H*, Dkt. 15-13 at 19. It is true that the Board also concluded that "the administration's recommendation for possible immediate discharge has been substantiated by the evidence presented at the hearing…." *Id.* No meat was added to that bare bones and ambiguous statement. Nevertheless, it would appear to be enough to open the door to the Defendants' argument that they terminated Eastop for other bad conduct, and not in retaliation for a refusal to accede to the demand that he submit to drug/alcohol testing. But, again, before the Defendants can present evidence of conduct after August 15, they must submit evidence that the decision-maker in the due process hearing, considered that conduct in confirming the decision to terminate Eastop.

A similar analysis applies to Eastop's Rehabilitation Act claim. In response to that claim, the Defendants have put forth a business necessity defense. Defendants argue that, in support of that defense, they should be permitted to offer evidence of Eastop's conduct through August 23, 2017 when Eastop actually

refused to test. The Court agrees, if evidence is also submitted that the decision-maker considered such post-August 15 conduct in determining that there was a business necessity to require Eastop to submit to drug and alcohol testing.

### 2. Reference to Idaho Education Association or Blaine County Education Association as a "union"

Plaintiff's ask the Court to exclude any reference to the Idaho Education Association or Blaine County Education Association as "unions," arguing that the term is prejudicial. *Pl.'s Mot.* at 5, Dkt. 48. Defendants object, arguing that both associations are in fact unions and that Eastop was represented by Linda Jones from IEA, and Tryntje VanSlyke from BCEA. *Def.'s Opp.* at 5, Dkt. 59. It is common knowledge that teachers are represented by their unions in negotiations with school administration and disciplinary proceedings. The Court does not see why the characterization of the IEA or BCEA as a "union," is in any way relevant to the issues in this case. On the other hand, the fact is that the IEA and the BCEA does represent Eastop, and is, in effect, his union. Therefore, the Court will not preclude the occasional use of the term "union" in referring to these two organizations, but will not permit counsel to repeatedly or unnecessarily refer to them as unions. If it appears that counsel is attempting to influence the jury by pointedly referring to them as unions, counsel may be reprimanded and the jury will be instructed to disregard counsel's comments.

### 3. Statements by counsel that would exaggerate the claim that Eastop was a danger to children

Eastop seeks to exclude any statement by Defense Counsel that "exaggerate the claim that Plaintiff was a danger to children." *Pl.'s Mot.* at 5, Dkt. 48. Defendants argue that safety of staff and students was a key consideration in deciding to place Eastop on probation. The Court will reserve ruling on this motion until testimony has been presented. However, the Court cautions both parties not to make statements that are not supported by the testimony.

### 4. Hearsay

Eastop seeks to exclude, as hearsay, an email from "Alturas Parents," an email from "Alturas Teachers," any statement without signature or name of declarant, and any anonymous complaint that Eastop was allegedly impaired. The issue in this case is whether the suspicionless search provision of Eastop's probation was reasonable or whether the testing was justified by business necessity.

The Court has reviewed multiple unsigned or anonymous complaints, and the email from "Alturas Teachers," submitted as exhibits during the summary judgment stage. The Court previously held that some of these statements were not hearsay because they were being offered for their effect on the listener, rather than for the truth of the matter asserted. Consistent with that ruling, the Court will allow

unsigned and anonymous statements that allege Eastop was impaired while at school or acted erratically so long as they are offered for the purpose of supporting reasonableness or the business necessity of testing. The Court will also allow the email from Alturas Teachers to the extent it is offered to show the same.

The Court has not reviewed the email from "Alturas Parents," therefore the Court will withhold judgment on this exhibit, but would anticipate that the same ruling would be made to that exhibit.

### 5. Principal Henson's opinion as to any increase in injuries in Eastop's class

At his deposition Principal Henson testified that there had been an uptick of student injuries in Eastop's PE class. Eastop argues that Henson is not qualified to testify linking proximate causation of student injuries to Eastop's teaching and supervision, and that such testimony would be highly speculative. It appears from his motion that Eastop only seeks to prevent Principal Henson from opining on the cause of the injuries, but not on the increase.

Under Federal Rule of Evidence 701 a witness may offer opinion testimony that is rationally based on the witness' perception, is helpful to clearly understanding the testimony or to determine a fact at issue, and is not based on scientific, or other specialized knowledge. Here, any testimony of Principal Henson, beyond his observation that there was an increase in the number of student

injuries, would exceed the proper limits of Rule 701 lay opinions. The Court will not allow Principal Henson to testify to the possible cause of the increase in injuries. Such testimony would be sheer speculation and could not be rationally based on his observations of Eastop's teaching and classroom management.

B.  **Plaintiff's Second Motion in Limine**

Eastop seeks to exclude six potential defense witnesses from testifying. *Pl.'s Mot.* at 1, Dkt. 56. Eastop argues that Defendants did not disclose these witnesses until they produced their first pretrial witness list. *Id.* Eastop also argues that the testimony of these witnesses would not be relevant and would be unduly prejudicial. *Id.* While Defendants acknowledge that they failed to supplement their initial disclosures or responses to Plaintiff's interrogatories, they argue that Plaintiff was well aware of these witnesses and their potential testimony. *Def.'s Opp.* at 7, Dkt. 59.

The Federal Rules of Civil Procedure require parties to provide to other parties "the name ... of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). And, "[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure" in a "timely manner if the party learns that in some material respect the

**MEMORANDUM DECISION AND ORDER - 11**

disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id*. R. 26(e).

A party that does not timely update its discovery or disclosures under Rule 26 may not use the substance of the discovery response to supply evidence at a trial "unless the failure was substantially justified or is harmless." *Id*. R. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001). The party seeking to introduce the discovery must prove harmlessness. *Yeti*, 259 F.3d at 1107. Whether a Rule 26(a) violation is "justified" or "harmless" is entrusted to the court's discretion based on such factors as: (1) the importance of the evidence; (2) whether the party against whom it is offered is prejudiced or surprised; (3) that party's ability to discover the evidence; (4) whether the nondisclosure was willful or inadvertent; and (5) whether exclusion of the evidence would disrupt the trial.

1. **Kathryn Ellison, Kristin Cassalia**

Defendants argue that Ellison and Cassalia were disclosed by the Plaintiff in his initial disclosures as people who may have discoverable information. *Def.'s Opp.* at 7, Dkt. 59. However, the knowledge of Eastop's counsel that Ellison and Cassalia may have relevant information, does not mean that defense counsel's failure to disclose them as witnesses was harmless. On the eve of trial, counsel for

Eastop now learns, for the first time, that the Defendants intend to call them as witnesses. This will force counsel to make hard decisions as to how they allocate their limited time in preparing for trial. At a minimum, the witnesses will have to be interviewed, and it is possible that depositions will need to be scheduled. Accordingly, the Court concludes that Defendants have not met their burden of showing that nondisclosure was harmless.

On the other hand, Ellison and Cassalia were both identified by name in documents the Court relied on in deciding the parties' motions for summary judgment. *See Def.'s Ex. 3, 4, 9*, Dkt. 17-2. Ellison's email alleging sexual harassment was forwarded to Eastop by Henson. The allegations contained in the email provided at least some of the basis for the Board's decision to begin termination proceedings in May. Cassalia's statement was made to the school administration in reference to the April 2017 school assembly where Eastop is alleged to have acted particularly erratically and was discussed extensively by both parties. Due to the reliance on the documents already in the record throughout the proceedings, the Court will exercise its discretion to permit Ellison and Cassalia to testify, but limited only to those matters relied upon by counsel and the Court in resolving the motion for summary judgment. Any other testimony will be excluded.

### 2. Elaine Poklemba

Defendants argue that admitting testimony from Poklemba will also be harmless because Eastop disclosed an email from Poklemba in his initial disclosures. *Def.'s Opp.* at 8, Dkt. 59. But, as discussed above, knowledge of the email is not the same as knowing that the Defendants intend to call its author as a witness, and it seems clear that late disclosure may well disrupt opposing counsel's last-minute trial preparations. The Court again finds that the Defendants have not met their burden of showing harmlessness.

On the other hand, Eastop used Poklemba's email as an exhibit at his due process hearing. Poklemba's email was included in Defendants' exhibit supporting their motion for summary judgment. *Def.'s Ex. 9*, Dkt. 17-2. Poklemba's email was sent to Principal Henson in reference to Eastop's behavior at the April 2017 assembly. Although Defendants' non-disclosure of Poklemba was not justified, the reliance on Poklemba's email throughout the proceedings persuades the Court that it should exercise its discretion to permit Poklemba to be called as a witness. Poklemba's testimony will, however, be limited to her authorship of the email. Any other testimony will be excluded.

### 3. Gretchen Weber, Neiysi Monjaras, Nancy Ruiz Meza

Defendants argue that the failure to disclose Weber, Monjaras, and Ruiz Meza was also harmless. Defendants argue that Weber was disclosed to Defendants in Plaintiff's initial disclosure as someone who might have information. Defendants also argue that Monjaras and Ruiz Meza were involved in the April 2017 assembly, which was the subject of Poklemba's email. *Def.'s Opp.* at 8, Dkt. 59. Defendants further argue that although Monjaras and Ruiz Meza were never disclosed by name they provided statements regarding Eastop's behavior at the assembly and were referenced by Principal Henson in the due process hearing.

The witness's statements regarding Eastop's behavior were turned over in Eastop's initial disclosures, and may have been referenced at the due process hearing. However, Defendants concede that they were never actually identified by name either in Defendants' exhibits supporting summary judgment or in the due process hearing. The Defendants have not met their burden of showing that the non-disclosure of these witnesses was harmless. Accordingly, their testimony will be excluded.

### 4. Relevance and Prejudice

Eastop argues that even if the above witnesses are admissible despite the failure by Defendants to disclose, they are not relevant. *Pl.'s Mot.* at 4, Dkt. 56. Given the Court's ruling above, it would appear to be unnecessary to address this additional argument.

### C. Defendants' Motion in Limine

#### 1. Evidence of liability insurance

Defendants seek to exclude evidence of liability insurance under Rule 411. Plaintiff has not objected to this motion. There are no issues of ownership or control in this case. Accordingly, the Court will exclude evidence of liability insurance held by the Defendants.

#### 2. Evidence relating to any need to accommodate Eastop

Defendants also seek to exclude evidence that they were required to make reasonable accommodations for Eastop. During the pretrial conference Plaintiff's Counsel indicated that they would not be raising the issue of reasonable accommodations. Further, the nature of the remaining claims does not require any showing of reasonable accommodation. Accordingly, the Court will grant Defendants motion and exclude evidence of a need to accommodate Eastop.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motions in Limine (Dkt. 48, 56) are **GRANTED IN PART and DENIED IN PART** as described above.

2. Defendants' Motion in Limine (Dkt. 52) is **GRANTED**.

DATED: February 26, 2020

B. Lynn Winmill
U.S. District Court Judge